**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**ABRAHAM LINC CORPORATION,**

**Plaintiff**,

**v.**

**SPINNAKER INSURANCE COMPANY and COWBELL CYBER, INC.,**

**Defendants**,

**CIVIL ACTION NO.: 1:23-CV-98
(JUDGE KLEEH)**

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION TO COMPEL [ECF NO. 31] AND DENYING
PLAINTIFF'S SUBSEQUENT MOTION TO COMPEL [ECF NO. 40]**

Presently pending before the Court is a motion to compel discovery [ECF No. 31] filed by Plaintiff on March 25, 2024. By Referral Order [ECF No. 36] entered on April 10, 2024, the Hon. Thomas S. Kleeh, Chief United States District Judge, referred the motion [ECF No. 31] to the undersigned United States Magistrate Judge for hearing and disposition. The Court also is in receipt of Defendant's response [ECF No. 35] in opposition to the motion, filed on April 8, 2024, as well as Plaintiff's reply [ECF No. 39] in support of its motion, filed on April 15, 2024.

Also presently pending before the Court is a motion to compel discovery [ECF No. 40] filed by Plaintiff on April 17, 2024. By Referral Order [ECF No. 42] entered on April 23, 2024, the Hon. Thomas S. Kleeh, Chief United States District Judge, referred the motion [ECF No. 40] to the undersigned for hearing and disposition. To this end, the Court also is in receipt of Defendant's response [ECF No. 44] in opposition to the motion, filed on April 29, 2024, as well as Plaintiff's reply [ECF No. 45] in support of its motion, filed on May 2, 2024.

The Court, by the undersigned, convened a Motion Hearing on May 6, 2024 as to the two referred motions. Counsel for the respective parties appeared for the Motion Hearing by videoconference. The Court heard the arguments of counsel, and now addresses each of the referred motions in turn.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The facts and issues presented are summarized from the First Amended Complaint [ECF No. 1-6] and the parties' briefs submitted herein. Plaintiff is a business entity engaged in wholesale flooring. [ECF No. 1-6, at 1]. BBL Flooring ("BBL") is an entity from which Plaintiff has purchased flooring products for some years. Plaintiff purchased an insurance policy from Defendant Spinnaker Insurance Company ("Spinnaker") for coverage spanning January 29, 2023 to January 29, 2024. In general terms, the policy is for losses resulting from cyber security breaches. The parties dispute whether the policy covers the cyber security breach which Plaintiff experienced.

In brief, the cyber security breach involved a third-party fraudster impersonating a representative of BBL. The fraudster communicated by e-mail with certain of Plaintiff's employees about outstanding invoices by which Plaintiff supposedly owed payments to BBL. Ultimately, Plaintiff initiated three wire transfers (on May 4, 5, and 9, 2023) to pay the fraudulent invoices. When Plaintiff discovered the problem and made a claim for coverage of the losses, Defendant Cowbell Cyber, Inc. ("Cowbell"), acting as Spinnaker's adjuster, investigated the loss. Spinnaker denied the claim on the basis that Plaintiff did not follow an established procedure to verify the propriety of the payments before transmitting them. Spinnaker argues that the policy requires that Plaintiff have such protocols in place (and follow them) as a condition precedent to having coverage. Moreover, Spinnaker argues that, to afford coverage, the policy requires that the

claimed losses result from the fraudster entering Plaintiff's computer system; however, here, Plaintiff's employees wired the funds on the basis of e-mail exchanges with the fraudster, such that the fraudster themselves never entered Plaintiff's computer system.

On November 7, 2023, Plaintiff filed the First Amended Complaint [ECF No. 1-6] in the Circuit Court of Harrison County, West Virginia. Plaintiff lodged claims for (1) insurance bad faith (common law and statutory), (2) breach of contract/breach of the duty of good faith and fair dealing and declaratory judgment, (3) constructive fraud, (4) reasonable expectations, and (5) vicarious liability. On December 5, 2023, Defendants removed the action to this Court on the basis of diversity jurisdiction.

By the motion to compel as to the *first* set of requests for production, Plaintiff seeks, generally speaking, Defendants' policies and procedures for the handling of claims made under cyber insurance policies, as well as certain information about Defendants' handling of Plaintiff's particular claim. By the motion to compel as to the *second* set of requests for production, Plaintiff seeks certain information concerning an advertisement published by Spinnaker. The advertisement pertains to the coverage of an insurance claim which Plaintiff believes is similar to Plaintiff's own insurance claim.

Defendants oppose the motions to compel. First, Defendants argue that their pending motion to dismiss and motion to stay discovery should be resolved before they expend resources to respond to discovery requests. Second, Defendants argue that the information which Plaintiff seeks has no bearing on the claims and defenses herein, in that the cyber insurance policy speaks for itself. In other words, Defendants argue that whether there was a contract breach, bad faith, or the like are issues which can be resolved by the information already available to the parties, and

internal information about Defendants' claims handling and policy interpretation has no bearing on these issues.

## II. ANALYSIS

The undersigned addresses, in turn, the several issues raised during the Motion Hearing of May 6, 2024.

### A. Court Action on Plaintiff's Motions

As to Defendants' argument about refraining from action on the motions to compel until the presiding District Judge acts on their pending motions to dismiss and stay discovery, the undersigned explained during the Motion Hearing of May 6, 2024 that the Court will address the substance of the motions. Plaintiffs' two motions to compel have been referred to the undersigned for action, not inaction, and so they will be addressed in turn. The Scheduling Order herein continues to be effective, and in order to adhere to current dates and deadlines therein, discovery should not be delayed.

### B. Delayed Action/Withdrawal of Certain Discovery Requests

Moreover, during the Motion Hearing of May 6, 2024, Plaintiff's counsel stated that Plaintiff has agreed to hold in abeyance certain requests in the First Set of Requests for Production – namely, Request for Production Nos. 3, 4, 6, and 7. Plus, per Plaintiff's counsel, Plaintiff is withdrawing Request for Production No. 13. Accordingly, as to Plaintiff's motion to compel [ECF No. 31], it is **DENIED in part as moot**, given this development. However, as to Request for Production Nos. 3, 4, 6, and 7, this does not mean that Plaintiff cannot reinitiate a motion to compel at a later stage of the litigation. During the Motion Hearing, the Court assured Plaintiff's counsel that holding these requests in abeyance did not operate as a waiver to raise them in a later motion. To this end, it is **ORDERED** that any motion which Plaintiff may later wish to lodge with respect

to Request for Production Nos. 3, 4, 6, and 7 must be filed timely per the requirements of the discovery deadline set forth in the then-applicable Scheduling Order.

**C. Remaining Items in First Set of Requests for Production**

As is well-known to counsel for the parties, under the Federal Rules of Civil Procedure:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Additionally, in order to be discoverable, the information sought need not necessarily be admissible. Id.

Plaintiff seeks certain background information about the process by which Defendants denied Plaintiff's claim. Defendants resist providing such information because they say the plain terms of the policy govern, such that any such information is extrinsic in nature and thus not germane to Plaintiff's claims. Plaintiff, however, argues that the materials bear directly on the question of how Defendants determined that Plaintiff's conduct was insufficient to afford coverage.

As discussed more fully on the record, and given the scope of the above-cited Rule and interpretative caselaw, the undersigned **FINDS** that Plaintiff is entitled to certain information sought – that being interpretative materials related to the policy at issue. Essentially, Defendants' denial of the claim was based on Plaintiff supposedly not having a verification process to guard against the actions of a fraudster. Thus, Defendants should produce materials which memorialize the processes by which Defendants decided there was no coverage for Plaintiff's claim. To the extent which they exist, Defendants must produce their interpretative materials which detail how Defendants determine what is (and is not) an insured's valid verification process, and what is (and

is not) adequate training of an insured's employees for adherence to such a verification process. In short, Defendants should be able to point to materials which detail how Defendants determine whether an insured meets (or fails to meet) Defendants' expectations in this regard. As a corollary, though, if no such interpretative materials exist, the Court would expect Defendants to say as much via verified responses to Plaintiff's requests.

On a related note, Plaintiff seeks interpretive materials for Defendants' policies which predate the one which Plaintiff purchased. However, such materials would not bear on how Defendants made the determination with respect to Plaintiff's claim under the policy which Plaintiff purchased.

Thus, to the extent which the materials Plaintiff seeks are consistent with the above description as to what materials it may permissibly obtain, Plaintiff's motion [ECF No. 31] is **GRANTED in part**. During the Motion Hearing, counsel for the parties made some distinction between "interpretative materials" and other materials such as "guidance" and "manuals." The expectation of the Court is that, to the extent such "guidance" and "manuals" also contain materials which governed the process by which Defendants interpreted Plaintiff's specific policy as not covering the loss at issue, then Defendants must produce such materials. Further, to the extent which such materials do not exist, Defendants must affirm the same in their verified responses. Defendants must provide responses to the requests for production at issue by **May 28, 2024**. However, to the extent which Plaintiff seeks materials which pertain to policy predating the one Plaintiff purchased, the motion is **DENIED in part**. It is all so **ORDERED**.

**D. Second Set of Requests for Production**

Plaintiff's Second Set of Requests for Production pertains to an advertisement which Defendants published. The advertisement is about a "claim case study" by which an insured was

afforded coverage under a policy which Plaintiff perceives to be the same or similar to the one Plaintiff purchased. The insured's loss depicted in the advertisement/case study looks, to Plaintiff, to be analogous to the situation by which Plaintiff itself made a claim and was denied coverage. Plaintiff seeks certain underlying documentation related to the claim highlighted in the case study, as well as documentation related to similar such case studies.

As discussed more fully on the record during the Motion Hearing, Plaintiff's motion [ECF No. 40] in this regard is premature. As such, it is **DENIED** at this time. However, at an appropriate later stage of the litigation, Plaintiff may renew the motion by making timely and proper filing. Plaintiff is cautioned that, should it choose to do so, it must file any renewed motion consistent with the requirements of the discovery deadline set forth in the then-applicable Scheduling Order. It is all so **ORDERED**.

The Clerk of the Court is **DIRECTED** to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: May 13, 2024.**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE