IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

ABRAHAM LINC CORPORATION,

      Plaintiff,

v.                         CIVIL ACTION NO. 1:23-CV-98
                                 (KLEEH)

SPINNAKER INSURANCE COMPANY and
COWBELL CYBER, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [ECF NO. 9]

Pending before the Court is *Defendants' Motion to Dismiss First Amended Complaint* [ECF No. 9]. For the reasons discussed herein, the Motion [ECF No. 9] is **GRANTED IN PART and DENIED IN PART**.

## I.   PROCEDURAL HISTORY

On November 1, 2023, Plaintiff Abraham Linc Corporation ("Plaintiff" or "Abraham Linc") filed suit against Spinnaker Insurance Company ("Spinnaker") and Cowbell Cyber, Inc. ("Cowbell") (collectively "Defendants") in the Circuit Court of Harrison County, West Virginia. ECF No. 1-1. Plaintiff filed its *First Amended Complaint* ("Amended Complaint") on November 7, 2023. ECF No. 1-7 at p. 126. The Amended Complaint alleges (1) Bad Faith – Common Law and Statutory; (2) Breach of Contract; (3) Constructive Fraud; (4) Reasonable Expectations; and (5) Vicarious Liability, revolving around Defendants' denial of insurance

coverage under a Social Engineering endorsement and a Computer and Funds Transfer Fraud endorsement. ECF No. 1-7. On December 5, 2023, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. ECF No. 1.

On January 4, 2024, Defendants moved to dismiss Plaintiff's Amended Complaint. ECF No. 9. Plaintiff responded in opposition to the Motion to Dismiss on January 26, 2024 [ECF No. 18] and Defendants subsequently replied in support of dismissal on February 9, 2024. ECF No. 26. The Court further took up oral argument on the Motion on June 18, 2024. The Motion to Dismiss [ECF No. 9] is thus fully briefed and ripe for review.

## II.  FACTUAL ALLEGATIONS

Through its insurance agent, Blue Ridge Risk Partners, and its insurance broker, Burns & Wilcox, Abraham Linc procured a Cyber Insurance Policy ("Policy") from Defendant Spinnaker, effective January 29, 2023. Am. Compl., ECF No. 1-7, at p. 128, ¶ 11. The Policy included a Social Engineering Endorsement which provided $100,000.00 in insurance coverage for social engineering losses. Id. at ¶ 12. A social engineering loss means the loss of money as a result of a social engineering incident. Policy, ECF No. 1-7, at p. 53. Pursuant to the Social Engineering Endorsement, a "Social Engineering Incident" means:

> the intentional misleading of an **Insured** to transfer **Money** to a person, place or account beyond the **Named Insured's** control resulting

2

directly from the **Named Insured's** employee's good faith reliance upon an instruction transmitted via email, purporting to be from:

    i.   a natural person or entity who exchanges, or is under contract to exchange, goods or services with the **Named Insured** for a fee (other than a financial institution, asset manager, broker-dealer, armored motor vehicle "named insured" or any similar entity); or

    ii.  an employee of the **Named Insured**; but which contained a fraudulent and material misrepresentation and was sent by an imposter. As a condition precedent to coverage, the **Insured's** established and documented verification procedure must have been followed before acting upon such instruction.

Id. at p. 52. Prior to issuing the Policy, Plaintiff alleges that Spinnaker did not request it create formal written policies related to social engineering incidents or complete additional training or social engineering updates. Am. Compl., ECF No. 1-7, at p. 128, ¶¶ 13-14. Abraham Linc's established, documented and historic protocol for verifying Automated Clearing House ("ACH") fund transfers was to email with known vendors and contacts. Id. at ¶ 15. Spinnaker never questioned Plaintiff's verification practice. Id. at ¶ 16.

Additionally, Abraham Linc's Policy included a Computer and Funds Transfer Fraud ("CFTF") Endorsement with $2,000,000.00 in coverage. Id. at ¶. 41. The CFTF will pay for:

    i.   **Loss** resulting directly from a fraudulent:

1. Entry of **Electronic Data or Computer System** into; or

2. Change of **Electronic Data or Computer System** within

a **Computer System**, by a person or organization without authorization to access such **Computer System**, provided the fraudulent entry or fraudulent change causes, with regard to Paragraphs **a.i.(1)** and **a.i.(2):**

    a. **Your** money, securities or other property to be transferred, paid or delivered; or

    b. Your account at a financial institution to be debited or deleted, or

**ii.** **Loss** resulting directly from a **Fraudulent Instruction** directing a financial institution to debit your **Transfer Account** and transfer, pay or deliver money or securities from that account . . .

Policy, ECF No. 1-7, at p. 47.

On or about April 20, 2023, long-standing vendor BBL Flooring's email accounts were hacked by a third party. Am. Compl. at ¶ 17. Abraham Linc had a long-standing and established relationship with BBL Flooring, in which it purchased flooring products. Id. at 18. As part of this relationship, Plaintiff transacted business and emailed with BBL Flooring employee Kris Yin from BBL Flooring's Changzhou City, Jiangsu Province, China office since at least 2017. Id. at ¶¶ 20-21. In late April or early May of 2023, various Abraham Linc employees emailed with whom they

believed was Kris Yin regarding due and owing invoices. Id. at ¶ 19. Plaintiff states its employees engaged in its "long-standing vendor verification procedures" in which they emailed with "Kris Yin" to discuss and verify outstanding bills. Id. at ¶ 23.

Ultimately, Abraham Linc sent, via ACH Transfer, a "substantial sum of money" consistent with the directives it received from BBL Flooring and "Kris Yin". Id. Though the funds transfer appeared to Plaintiff at the time to be an "ordinary transaction in the context of Abraham Linc and BBL Flooring's working relationship," it later learned that BBL Flooring's internal system had been hacked and that it had communicated with a fictitious Kris Yin. Id. at ¶¶ 23-24. Further, on or about May 11, 2023, Plaintiff discovered that it had transferred its funds to a scam/fake BBL Flooring account – not its long-standing vendor. Id. at ¶ 25. Abraham Linc was unable to stop the ACH transfer or otherwise recoup its funds. Id. at ¶¶ 26-27. Thus, Plaintiff put its insurance agent/broker on notice of its loss under the Policy on May 11, 2023. Id. at ¶ 27.

Upon giving notice of its loss, Plaintiff's insurance agent/broker advised Plaintiff that it would receive $100,000.00 in proceeds, pursuant to the Social Engineering Endorsement. Id. at ¶ 29. However, the same day and without any investigation, Defendants Spinnaker Insurance Company and Cowbell Cyber, Inc. advised that Plaintiff's claim would be denied due to a lack of

verification by the insured. Id. at ¶ 30. On and following May 11, 2023, Plaintiff provided Defendants with materials evidencing its verification practices and verified transactions with BBL Flooring over approximately seven years. Id. at ¶ 31. Additionally, Plaintiff's insurance agent/broker repeatedly told Defendants that it disagreed with Defendants' coverage position. Id. at ¶ 32. For example, Sheri O'Donoghue, the Director of Claims at Blue Ridge Risk Partners emailed Defendants at least twice supporting Plaintiff's verification process and reiterating that it expected Defendants to release the $100,000.00 in social engineering coverage to Abraham Linc. Id. at ¶ 33.

Though Plaintiff's insurance agent and insurance broker believed coverage was appropriate, Defendants upheld their coverage denial. Id. at ¶ 34.

### III. **LEGAL STANDARD**

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a Complaint does not "state a claim upon which relief can be granted." In ruling on a motion to dismiss, a court "must accept as true all of the factual allegations contained in the Complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

A motion to dismiss under Rule 12(6)(b) tests the "legal sufficiency of a Complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). A court should dismiss a Complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The factual allegations "must be enough to raise a right to relief above a speculative level." Twombly, 550 U.S. at 545. The facts must constitute more than "a formulaic recitation of the elements of a cause of action." Id. at 555. A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 942, 952 (4th Cir. 1992).

## IV.   DISCUSSION

For the reasons that follow, *Defendants' Motion to Dismiss First Amended Complaint* [ECF No. 9] is **GRANTED IN PART and DENIED IN PART**. The Motion is **GRANTED** as to Plaintiff's Breach of Contract claim under the Computer and Funds Transfer Fraud ("CFTF") Endorsement (Count II in part) and Count IV Reasonable Expectations. *Defendants' Motion to Dismiss First Amended Complaint* [ECF No. 9] is **DENIED** as to Plaintiff's Breach of

Contract claim under the Social Engineering Endorsement (Count II in part); Count I Bad Faith; Count III Constructive Fraud, and Count V Vicarious Liability.

### A. <u>BREACH OF CONTRACT</u>

In West Virginia, the elements of breach of contract are (1) a contract exists between the parties; (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach. <u>Patrick v. PHH Mortgage Corp.,</u> 937 F.Supp.2d 773, 792 (N.D.W. Va. 2013). "A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." <u>Wickland v. Am. Mountaineer Energy, Inc.,</u> No. 1:17-CV-205, 2019 WL 1590590, at *6 (N.D.W. Va. Apr. 12, 2019) (quoting Syl. Pt. 2, <u>Toppings v. Rainbow Homes, Inc.,</u> 490 S.E.2d 817 (W. Va. 1997)). "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous." <u>Id.</u> (quoting syl. Pt. 2, <u>CONSOL Energy, Inc. v. Hummel,</u> 792 S.E.2d 613 (W. Va. 2016)).

1. **Defendants' Motion to Dismiss the Claim for Breach of Contract under the Computer and Funds Transfer Fraud Endorsement is Granted.**

Plaintiff's breach of contract claim under the Computer and Funds Transfer Fraud ("CFTF") Endorsement is dismissed because Plaintiff failed to plead facts that the subject loss resulted from unauthorized access to Abraham Linc's computer system. The

CFTF Endorsement provides in pertinent part that Spinnaker will pay for a loss resulting directly from a fraudulent entry or change of electronic data or computer system, within "a computer system, by a *person or organization without authorization to access such computer system*." ECF No. 1-7 at p. 47 (emphasis added).

Courts have found that the "reasonable expectations of the average insured upon reading [a CFTF] policy," is "that the rider applies to losses resulting directly from fraudulent access, not to losses from the content submitted by authorized users." Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 25 N.Y.3d 675, 683, 37 N.E.3d 78, 82 (2015).[1] In analyzing a similar CFTF endorsement, a Central District of California court found that the policy was meant to cover fraudulent entries or changes to a computer system but did not cover "an *authorized entry* of fraudulent electronic data or computer program." Cachet Fin. Servs. v. Berkley Ins. Co., No. 222CV01157SPGJEM, 2023 WL 2558413, at *5 (C.D. Cal. Jan. 20, 2023), aff'd in part, rev'd in part and remanded, No. 23-55217, 2024 WL 1042985 (9th Cir. Mar. 11, 2024) (noting "the fact that the data itself was fraudulent does not

---

[1] "Courts consistently recognize this language requires unauthorized access to, or hacking of, the insured's computer. For example, if an employee had authorization to use the insured's computer but inputs fraudulent data, there is no coverage because there was no unauthorized access of the computer and there was not a fraudulent transfer." C. Adam Brinkley, Theresa A. Gooley, Trying to Fit a Round Peg in A Square Hole: Computer Fraud Insuring Agreements Were Not Designed or Intended to Cover Social Engineering Losses, 26 Fidelity L.J. 193, 195 (2020).

negate that the Clients' 'entry' into Plaintiff's computer system was done pursuant to authorization."). "Coverage under the Computer Transfer Fraud provision is available only when a computer-based fraud scheme causes a transfer of funds without the Insured's knowledge or consent." Mississippi Silicon Holdings, L.L.C. v. Axis Ins. Co., 843 F. App'x 581, 585–86 (5th Cir. 2021) (finding the Computer Transfer Fraud provision specifically disclaims coverage for transfers made with the insured's knowledge, and three employees affirmatively authorized the transfer). See also, Taylor & Lieberman v. Fed. Ins. Co., 681 F. App'x 627, 629 (9th Cir. 2017) (finding there was no computer fraud or funds transfer fraud coverage because there was not an unauthorized entry into the insured's computer system, and it knew about the wire transfers).

    Reading a CFTF endorsement to "cover all transfers that involved a computer and fraud would . . . turn[] it into a general fraud policy." Pestmaster Servs., Inc. v. Travelers Cas. & Sur. Co. of Am., 656 F. App'x 332 (9th Cir. 2016) (affirming the district court's finding that the Computer Fraud provision did not cover any transfers authorized by the insured). Furthermore, sending emails, without more, does not "constitute[] an unauthorized entry into the recipient's computer system." Taylor & Lieberman, 681 F. App'x at 629.

    Defendants argue dismissal of the breach of contract claim,

as to the CFTF Endorsement, is warranted because it does not cover losses resulting from authorized entries into Abraham Linc's computer system. ECF No. 10 at p. 9. According to Defendants, the Amended Complaint alleges that Plaintiff's <u>authorized</u> employees input the fraudulent data into Abraham Linc's computer system to make the ACH transfers. <u>Id.</u> at p. 10. Because Abraham Linc employees used information supplied by fraudsters, Defendants contend the allegations do not fall within the CFTF Endorsement. <u>Id.</u> Defendants further argue that Plaintiff's mere receipt of an email from a fraudster does not qualify as an unauthorized entry or change of electronic data or computer system within a computer system by a person or organization without authorization. <u>Id.</u> at p. 11. Thus, Defendants claim that neither the receipt of an email with fraudulent information nor the authorized input into Plaintiff's computer system of the fraudulent information satisfies the terms of the CFTF Endorsement. <u>Id.</u> at p. 13.

In contrast, Plaintiff asserts that the allegations in the Amended Complaint are sufficient and the CFTF Endorsement's applicability should be assessed on a more developed record following discovery. ECF No. 18 at pp. 17-20. Additionally, Plaintiff references a circuit split which it contends is relevant to this Court's interpretation of the CFTF Endorsement. <u>Id.</u>

Here, the Court agrees with Defendants that Plaintiff's loss is not covered by the CFTF Endorsement because the loss did not

result from unauthorized access to Abraham Linc's computer system. Courts interpreting similar endorsement language have found that CFTF endorsements apply to losses resulting directly from fraudulent access, not to losses from the content submitted by authorized users. Universal Am. Corp., 25 N.Y.3d at 683, 37 N.E.3d at 82; Cachet Fin. Servs., 2023 WL 2558413, at *5. Here, Plaintiff does not dispute that its employees, with authorized access, initiated the ACH transfers to the fraudsters. Abraham Linc's computer system was not hacked and there no unauthorized access to its computer system to warrant coverage under the CFTF Endorsement. Moreover, the mere receipt of an email is insufficient to qualify as unauthorized access to Abraham Linc's computer system; without its employees inputting the fraudulent information and initiating the transfer, there would not have been a loss.

Plaintiff's arguments regarding the need for discovery and the supposed circuit split are furthermore unavailing regarding the CFTF Endorsement. First, the Amended Complaint does not allege an unauthorized entry or change of electronic data or computer system within a computer system by a person or organization without authorization. Rather, the Amended Complaint plainly asserts that "Abraham Linc ultimately sent, via ACH Transfer, a substantial sum of money . . . consistent with the directives sent to Abraham Linc by the fictious 'Kris Yin' on behalf of fake 'BBL Flooring' letterhead." ECF No. 1-7 at pp. 130, ¶ 23. Thus, there is no

dispute, necessitating discovery, that the entry into Abraham Linc's computer system was authorized and initiated by Plaintiff's employees.

Second, the circuit split raised by Plaintiff is not relevant to the language at issue in this case. While it is true that courts have grappled with the phrase "resulting directly from" in CFTF endorsements,[2] that language is not the basis for Defendants' denial of coverage. Here, the language at issue is "by a person or organization without authorization to access such Computer System." See Policy, ECF No. 1-7, at p. 47. The Court does not need to reach whether the loss was "resulting directly from" a fraudulent entry because there was no unauthorized access. Thus, the CFTF Endorsement does not apply to the subject loss and the circuit split is irrelevant to this Court's analysis. Accordingly, Defendants' Motion is **GRANTED** as to Plaintiff's Breach of Contract claim under the CFTF Endorsement and Count II of Plaintiff's Amended Complaint is **DISMISSED IN PART.**

> **2. Defendants' Motion to Dismiss the Claim for Breach of Contract under the Social Engineering Endorsement is Denied.**

Plaintiff's breach of contract claim under the Social Engineering Endorsement survives dismissal at the Rule 12(b)(6)

---

[2] Compare <u>Am. Tooling Ctr. v. Travelers Cas. & Sur. Co. of Am.</u>, 895 F.3d 455 (6th Cir. 2018) and <u>Cincinnati Ins. Co. v. Norfolk Truck Ctr., Inc.</u>, 430 F. Supp. 3d 116 (E.D. Va. 2019) with <u>Interactive Communs. Int'l, Inc. v. Great Am. Ins. Co.</u>, 731 Fed. Appx. 929 (11th Cit. 2018).

stage because Plaintiff sufficiently pled facts to support the policy's condition precedent was met. The Social Engineering Endorsement provides in pertinent part that Spinnaker will pay up to $100,000.00 for a social engineering loss which results directly from a social engineering incident, as defined under the Policy. ECF No. 1-7 at p. 52. "As a condition precedent to coverage, the Insured's established and documented procedure must have been followed before acting upon such instruction." Id.

"When a condition precedent is part of a cause of action, Rule 9 of the Federal Rules of Civil Procedure requires a plaintiff to plead compliance with that condition precedent." Allen v. Antero Res. Corp., No. 1:22-CV-56, 2024 WL 778396, at *4 (N.D.W. Va. Feb. 26, 2024). Further, a plaintiff's failure to comply with a condition precedent requires dismissal of the cause of action. See Stricklin v. Fortuna Energy, Inc., No. 5:12CV8, 2014 WL 2619587, at *3 (N.D.W. Va. June 12, 2014) (dismissing claim "[d]ue to the plaintiffs' failure to comply with ... a condition precedent to bringing their action). However, Rule 9(c) only requires a pleading party "to allege generally that all conditions precedent have occurred or been performed." Fed. R. Civ. P. 9(c).[3]

---

[3] In contrast, a party "denying that a condition precedent has occurred or been performed, [] must do so with particularity." Fed. R. Civ. P. 9(c).

In support of dismissal of the breach of contract claim regarding the Social Engineering Endorsement, Defendants argue there is no coverage because Plaintiff did not comply with the Policy's condition precedent requirement. ECF No. 10 at p. 14. Specifically, Defendants contend that Plaintiff did not plead that it followed an "established and documented verification procedure" before transferring the money to the fraudulent BBL account. Id. In order to satisfy the condition precedent, Defendants contend Abraham Linc must have had an "established" and "documented" verification procedure and alleged in its Amended Complaint that it followed that procedure before initiating the funds transfer to the fraudster. Id. However, Defendants assert that Abraham Linc's verification procedure was an "unwritten protocol," and that Plaintiff did not follow its verification procedure here, even if it did have one. Id. at p. 18. Thus, Defendants assert Plaintiff's loss is not covered under the Social Engineering Endorsement because Abraham Linc's "undocumented protocol of confirming ACH information with customers" does not meet the condition precedent. Id.

To the contrary, Plaintiff contends it set forth sufficient allegations in its Amended Complaint to support a claim under the Social Engineering Endorsement and that it satisfied the condition precedent through its verification procedure of emailing with known vendors and contacts. ECF No. 18 at p. 14. Plaintiff directs

the Court to paragraphs 16 through 24 of its Amended Complaint to support its position. Id. at pp. 14-15. Moreover, Plaintiff argues that whether the condition precedent was satisfied is a factual issue which should not be decided at the motion to dismiss stage. Id. at p. 15.

Here, the Court agrees with Plaintiff that it satisfied its pleading requirements under Fed. R. Civ. P. 12(b)(6) and the Social Engineering Endorsement breach of contract claim survives dismissal at this stage. Plaintiff's factual allegations regarding the condition precedent were sufficiently pled under Fed. R. Civ. P. 9(c). For example, Plaintiff's Amended Complaint alleged "the historic, documented and established protocol related to ACH transfer verification(s) was to verify the transfer via email with known vendors/contacts – as many of Abraham Linc's vendors were in distant markets and time zones, such as China, and thus were unavailable to verify transfers by way of phone." Am. Compl., ECF No. 1-7 at p. 128, ¶ 15.

Moreover, Plaintiff alleged "consistent with Abraham Linc's practice and procedures, Abraham Linc followed its procedures and engaged in numerous email confirmations/verifications with 'Kris Yin', which spanned several weeks in April/May of 2023." Id. at p. 129, ¶ 22. Plaintiff further set forth allegations that its procedure was communicated to Defendants by the Director of Claims at Blue Ridge Risk Partners. Id. at p. 131, ¶ 33 ("The method of

verification utilized by the insured is their continual relationship they have with the vendor and communications completed by email and specifically Kris Yin, the same individual they have communicated with over the years.").

There is clearly a dispute of fact as to whether the condition precedent was satisfied, which cannot be determined at this stage of the litigation. The parties should proceed with discovery. Moreover, Defendants acknowledge that the "condition precedent does not mandate a specific verification procedure." ECF No. 10 at p. 15. Thus, it would be improper for the Court to determine at this stage that Abraham Linc's verification process was insufficient without discovery. Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's Breach of Contract claim under the Social Engineering Endorsement.

### B. **BAD FAITH**

Defendants' motion to dismiss Plaintiff's statutory and common law bad faith claims are **DENIED** for the following reasons.

### 1. **Defendants' Motion to Dismiss Plaintiff's Statutory Bad Faith Claim is Denied.**

The Unfair Trade Practices Act ("UTPA"), in W. Va. Code § 33-11-4, sets forth a list of "unfair methods of competition and unfair or deceptive acts or practices in the businesses of insurance[.]" Specifically, W. Va. Code § 33-11-4(9) prohibits unfair claim settlement practices. To establish a cause of action under § 33-11-4(9), a plaintiff "must demonstrate that the insurer

(1) violated the UTPA in the handling of the claimant's claim and
(2) that the insurer committed violations of the UTPA with such
frequency as to indicate a general business practice." Holloman v.
Nationwide Mut. Ins. Co., 617 S.E.2d 816, 823 (W. Va. 2005).

"[E]ven though W.Va. Code § 33-11-4(9) requires more than a
single isolated violation in order to show a general business
practice, a claimant may produce sufficient evidence of this in a
single claim." Elmore v. State Farm Mut. Auto. Ins. Co., 504 S.E.2d
893, 902 (W. Va. 1998). See Dodrill v. Nationwide Mut. Ins. Co.,
491 S.E.2d 1, 12-13 (W. Va. 1997) ("separate, discrete acts or
omissions, each of which constitute violations of different sub-
paragraphs of W. Va. Code § 33-11-4(9), may indeed demonstrate a
'general business practice' in the handling of a single claim, the
focus of which would tend to show frequent and rather general
disregard for the several proscriptions separately set out in the
relevant statute."). "The [West Virginia] Supreme Court of Appeals
has explained 'that the reasonableness of an insurance company's
conduct [under the WVUTPA] "ordinarily is a question of fact for
the jury" that should not be determined as a matter of law by a
trial court.'" White v. Am. Gen. Life Ins. Co., 651 F. Supp. 2d
530, 547-48 (S.D.W. Va. 2009) (quoting Hicks ex rel. Saus v. Jones,
617 S.E.2d 457, 465 (W. Va. 2005)).

Defendants argue that the UTPA bad faith claim should be
dismissed because the Amended Complaint does not allege a pattern

or practice of violating the UTPA or separate and discrete violations. ECF No. 10 at p. 22. Rather, Defendants claim that the UTPA claim is "premised on – at most – one act or omission, namely, the Defendants' decision to deny coverage for the Loss under the Spinnaker Policy." Id. In response, Plaintiff asserts the Amended Complaint alleges multiple violations of the UTPA and directs the Court to Paragraphs 52 to 62. ECF No. 18 at pp. 20-21.

Here, the Court finds the Amended Complaint alleges multiple violations of W. Va. Code § 33-11-4(9), which are sufficient to survive dismissal. West Virginia law is clear that the handling of a single claim can demonstrate "separate, discrete acts or omissions, each of which constitute violations of different sub-paragraphs of W. Va. Code § 33-11-4(9)" and support a "general business practice." Dodrill, 491 S.E.2d at 12-13. In this instance, Plaintiff has set forth multiple violations in Defendants' handling of its claim including: "Refusing to pay claims without conducting a reasonable investigation based upon all available information and known facts;" "Compelling Abraham Linc to institute litigation to recover amounts due under an insurance policy by making no offer or unfair offers of resolution or compromise; and "Failing to promptly provide a commercially reasonable explanation of the basis for the insurer's position in relation to the facts where applicable law and facts support an insured's stated position." ECF No. 18 at p. 21. Thus, the Amended

19

Complaint as to the UTPA claim is sufficient to survive dismissal.

The Court notes that the UTPA bad faith claim survives regarding Plaintiff's allegations of <u>both</u> the Social Engineering Endorsement and the CFTF Endorsement. <u>See</u> <u>Dow v. Liberty Ins. Co.</u>, 2022 WL 17421055, at *3 (S.D.W. Va. Dec. 1, 2022) ("While a <u>Hayseeds</u> common law bad faith claim requires the plaintiff to have substantially prevailed in the underlying insurance dispute, a <u>Jenkins</u> statutory-based claim is not dependent upon a positive disposition of the underlying insurance claim."). Thus, Plaintiff can pursue its statutory bad faith claim regarding Defendants' denial of coverage under the CFTF Endorsement, despite the Court dismissing the underlying breach of contract claim. Accordingly, Defendants' Motion is **DENIED** as to Plaintiff's UTPA bad faith claim.

> **2. Defendants' Motion to Dismiss Plaintiff's Common Law Bad Faith Claim is Denied.**

Plaintiff's common law bad faith claim survives dismissal because the breach of contract claim under the Social Engineering Endorsement was adequately pled. "There is undoubtedly 'a common law duty of good faith and fair dealing running from an insurer to its insured.'" <u>Shaffer v. Nat'l Health Ins. Co.</u>, 2018 WL 1995525, at *2 (N.D.W. Va. Apr. 27, 2018) (quoting <u>Elmore</u>, 504 S.E.2d at 896 (citing <u>Hayseeds, Inc. v. State Farm Fire & Cas.</u>, 352 S.E.2d 73 (W. Va. 1986))). "[T]he common law duty of good faith and fair

dealing in insurance cases under our law runs between insurers and insureds and is based on the existence of a contractual relationship." Grubbs v. Westfield Ins. Co., 430 F. Supp. 2d 563, 567 (N.D.W. Va. 2006) (quoting Elmore, 504 S.E.2d at 897). "An insurance carrier has a duty, once a first-party policyholder has submitted proof of a loss, to promptly conduct a reasonable investigation of the policyholder's loss based upon all available information." Sellman v. Safeco Ins. Co. of Am., 2022 WL 4598571, at *5 (N.D.W. Va. July 25, 2022) (quoting Syl. Pt. 3., Miller v. Fluharty, 500 S.E.2d 310 (W. Va. 1997)) (declining to grant summary judgment on common law bad faith claim because genuine issues of fact existed as to the reasonableness of defendant's offer of settlement, investigation, negotiations, and general conduct during the handling of plaintiffs' claim)).

"In order for a policyholder to bring a common law bad faith claim against his insurer, . . . the policyholder must first substantially prevail against his insurer on the underlying contract action." Jordache Enters., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 513 S.E.2d 692, 695 (W. Va. 1998). "The term 'substantially prevail' necessarily refers to a verdict in favor of the insured on the underlying [] claim." Thomas v. State Farm Mut. Auto. Ins. Co., 608, 383 S.E.2d 786, 790 (W. Va. 1989), holding modified by Miller, 500 S.E.2d 310.

Defendants assert the common law bad faith claim should be dismissed because Plaintiff failed to adequately plead that its subject loss was covered under the CFTF or Social Engineering Endorsements. ECF No. 10 at p. 21. Specifically, Defendants rely upon Hayseeds, Inc. v. State Farm Fire & Cas for its position that Plaintiff must first substantially prevail against Defendants on the underlying contract action before bringing a common law bad faith claim. Id. In contrast, Plaintiff argues that it sufficiently pled the two breach of contract claims to survive dismissal of the common law bad faith claim. ECF No. 18 at p. 20.

As explained above, Plaintiff's breach of contract claim under the CFTF Endorsement fails to state a claim for relief, but the breach of contract claim under the Social Engineering Endorsement survives dismissal under Fed. R. Civ. P. 12(b)(6). Accordingly, dismissal of the common law bad faith claim – as to the Social Engineering Endorsement – would be premature because Plaintiff adequately pled breach of contract. Thus, Defendants' Motion as to the common law bad faith claim is **DENIED** because it remains possible for Plaintiff to substantially prevail on its Social Engineering Endorsement breach of contract claim. As Plaintiff's breach of contract claim under the CFTF Endorsement is dismissed, Plaintiff cannot pursue a common law bad faith claim relying upon Defendants' handling of the CFTF coverage.

## C. <u>CONSTRUCTIVE FRAUD</u>

Defendants' Motion to Dismiss Plaintiff's constructive fraud claim is denied because Plaintiff adequately alleges a claim of public policy constructive fraud. Constructive fraud is defined as "a breach of legal or equitable duty, which, irrespective of moral guilt of fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." <u>Van Heyde v. Miller</u>, 799 S.E.2d 133, 142 (W. Va. 2017) (citing <u>Miller v. Huntington & Ohio Bridge Co.</u>, 15 S.E.2d 687, 695 (W. Va. 1941)). "In other words, constructive fraud 'exists in cases in which conduct, although not actually fraudulent, ought to be so treated' because that conduct 'has all the actual consequences and legal effects of actual fraud.'" <u>Grimmett v. Sunlight Fin. LLC</u>, 2023 WL 6449447, at *7 (S.D.W. Va. Oct. 3, 2023) (quoting <u>Horton v. Pro. Bureau of Collections of Md., Inc.</u>, 794 S.E.2d 395, 399 (W. Va. 2016)). "Actual and constructive fraud involve the same basic elements, except that constructive fraud 'does not require proof of fraudulent intent.'" <u>Id.</u>

Importantly, "constructive fraud is generally reserved for those cases where a fiduciary relationship exists between the parties or the fraud violates an important public policy concern." <u>White v. Nat'l Steel Corp.</u>, 938 F.2d 474, 489-90 (4th Cir. 1991) (citing <u>Miller</u>, 15 S.E.2d at 695). <u>See also</u> <u>State v. Morgan Stanley</u>

& Co., 459 S.E.2d 906, 913 (W. Va. 1995) ("Constructive fraud includes violations of public policy or public rights or transactions affected by illegal conduct of any kind.").

A fiduciary duty is the "duty to act for someone else's benefit, while subordinating one's personal interest to that of the other person." Elmore, 504 S.E.2d at 898 (quoting Black's Law Dictionary 625 (6th ed. 1990)). West Virginia law does not recognize a fiduciary relationship between an insurer and its insured. Id. at 900 ("the relation between the parties to a contract of insurance is that of debtor and creditor; that is, of one contracting party to another contracting party . . . . The relation is a legal one rather than an equitable one."). See Morrison v. Columbia Gas Transmission, LLC, 2021 WL 4975743, at *3 (S.D.W. Va. Oct. 26, 2021) (finding the plaintiffs could not prove facts to support a claim for constructive fraud because entering a contract did not establish a fiduciary duty).

Thus, for Plaintiff's claim to survive dismissal, Plaintiff must sufficiently plead that Defendants' alleged fraud violated an important public policy concern. Certain unfair settlement practices prohibited by the UTPA regarding acts of misrepresentation or deception can support a fraud claim. See Wilt v. State Auto. Mut. Ins. Co., 506 S.E.2d 608, 611–12 (W. Va. 1998) (noting that other conduct prohibited by the UTPA does not amount to a fraud claim because said unfair settlement practices are

24

"geared more to the aspect of fostering claims processing in a timely manner to ensure fairness to the insured, rather than being aimed strictly at the elimination of conduct that is fraudulent in character."). The Northern District of West Virginia has previously recognized that a constructive fraud claim could be asserted based upon "West Virginia's public policy prohibiting insurers from taking unfair advantage of policy holders." Artworks, LLC v. Hartford Cas. Ins. Co., 2020 WL 2754918, at *3 (N.D.W. Va. May 27, 2020) (finding plaintiffs could possibly establish a cause of action for constructive fraud against insurer defendant).

Defendants argue dismissal of the constructive fraud claim is proper because Plaintiff's Amended Complaint does not allege Defendants made a false misrepresentation upon which Abraham Linc detrimentally relied. ECF No. 10 at p. 23. Defendants further argue that Plaintiffs failed to plead with particularity the time, place, and contents of the alleged fraud, as required by Fed. R. Civ. P. 9(b). Id. In contrast, Plaintiff asserts it has met its pleading burden for a constructive fraud claim. ECF No. 18 at p. 23. Specifically, Plaintiff argues it pled that Defendants "engaged in a scheme of bad acts/omissions in violation of substantial public policies." Id.

Here, Plaintiff's Amended Complaint sufficiently alleges constructive fraud. Plaintiff's Amended Complaint alleges that

25

West Virginia has "a substantial public policy prohibiting insurers from deceiving, oppressing, and/or taking unfair advantage of policy holders." Am. Compl., ECF No. 1-7, at p. 138, ¶ 71. According to Plaintiff, this public policy stems from West Virginia case law, legislative enactments, and insurance commissioner rules and regulations. Id. at ¶¶ 72-73. Furthermore, Plaintiff set forth sufficient facts to support that Defendants' acts or omissions constituted breaches of their legal or equitable duties to Plaintiff. For example, Abraham Linc pled with particularity the time, place, and contents of the alleged fraud in the following:

> 30. Notwithstanding the clarity of the insurance agent/broker's representations, after the claim was tendered and without any investigation, on May 11, 2023, Spinnaker and Cowbell verbally advised that they were going to deny Abraham Linc's social engineering claim due to a lack of verification on the part of the insured.

> . . .

> 36. The Defendants' omissions and failures are glaring, particularly as under West Virginia law, it is clear that "[a]ny person who shall solicit within this state an application for insurance shall, in any controversy between the insured or his or her beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured." W.Va. Code 33-12-22.

> 37. Thus here, in the context of the present coverage dispute, the Defendants' agents have plainly admitted that there is coverage such

> that Abraham Linc's social engineering loss
> claim is valid and should be paid.

Id. at ¶ ¶ 30, 36-37. Accordingly, Plaintiff's Amended Complaint sufficiently sets forth a claim for constructive fraud because Abraham Linc alleges fraudulent acts or omissions involving important public policy concerns. Thus, Defendants' Motion is **DENIED** as to Plaintiff's constructive fraud claim.

### D. REASONABLE EXPECTATION

Defendants' Motion as to Count IV Reasonable Expectations is granted because the doctrine of reasonable expectations is not a stand-alone cause of action. "[T]he doctrine of reasonable expectations is not a stand-alone cause of action but rather a rule of construction applicable to insurance contracts." State ex rel. Erie Ins. Prop. & Cas. Co. v. Beane, 2016 WL 3392560, at *2, n.2 (W. Va. June 13, 2016). See Robertson v. Cincinnati Life Ins. Co., 2019 WL 441184, at *9 (S.D.W. Va. Feb. 4, 2019) (granting summary judgment on reasonable expectation count); Sizemore v. Nw. Mut. Life Ins. Co., 2017 WL 3528851, at *4 (S.D.W. Va. Aug. 16, 2017) (dismissing reasonable expectation count because defendant rightly raised that it was not a stand-alone cause of action); Gates v. Morris, 2018 WL 1582470, at *10 (S.D.W. Va. Mar. 29, 2018); Goff v. Frontier Commc'ns of Am., Inc., 2017 WL 440731, at *5 (S.D.W. Va. Feb. 1, 2017).

Defendants rightly argue that Plaintiff cannot sustain a

separate claim for reasonable expectations. ECF No. 10. Thus, Defendants' Motion to Dismiss regarding Count IV Reasonable Expectations is **GRANTED** because it is not a separate cause of action and is duplicative of Plaintiff's Breach of Contract claims. Accordingly, Count IV of Plaintiff's First Amended Complaint is **DISMISSED.**

### E. <u>VICARIOUS LIABILITY</u>

Defendants' Motion as to Count V Vicarious Liability is denied. "Vicarious liability is not a claim on which relief can be granted, but is instead a theory of liability under which a proper claim could be asserted." <u>Myers v. City of Charleston</u>, 2020 WL 4195005, at *15-16 (S.D.W. Va. July 21, 2020). "Although vicarious liability is not an independent cause of action, 'West Virginia courts recognize that [vicarious liability] may be asserted as [an] independent claim[] as long as [it is] based on other underlying claims." <u>Reid v. W. Virginia State Police</u>, 2022 WL 732072, at *4 (S.D.W. Va. Mar. 10, 2022) (finding dismissal of the vicarious liability claim inappropriate at the 12(b)(6) stage because it could be read as extending liability of the state law claims). <u>See</u> <u>Penn v. Citizens Telecom Servs. Co., LLC</u>, 999 F. Supp. 2d 888, 894 (S.D.W. Va. 2014) (construing the vicarious liability count as a theory of liability to hold the defendant liable for the actions of its employee in the plaintiff's underlying hostile work environment claim).

ABRAHAM LINC CORP. v. SPINNAKER INS. CO., et al.          1:23-CV-98

Plaintiff's Amended Complaint alleges that Defendants should be liable "upon theories of vicarious liability, respondeat superior, master/servant, principle/agent and/or employer/employee based upon the acts of, including, but not limited to, Defendants' adjusters and agents/representatives." Am. Compl., ECF No. 1-7, at p. 140, ¶ 85. While Defendants are correct that vicarious liability is not a separate cause of action, Plaintiff brings claims of breach of contract and bad faith. At this stage, Count V can be construed as a separate theory to extend liability to the Defendants based upon the actions and statements of its alleged agents Blue Ridge Risk Partners and Burns & Wilcox.[4]

The Court finds dismissal at this stage is not appropriate because the vicarious liability claim is based upon other causes of actions. Accordingly, Defendants' Motion to Dismiss Count V is **DENIED.**

## V.   <u>CONCLUSION</u>

For the foregoing reasons, *Defendants' Motion to Dismiss First Amended Complaint* [ECF No. 9] is **GRANTED IN PART and DENIED**

---

[4] "West Virginia Code § 33-12-22 establishes that '[a]ny person who shall solicit within this state an application for insurance shall, in any controversy between the insured ... and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured.'" <u>GMC Real Est., LLC v. AmGUARD Ins. Co.</u>, 683 F. Supp. 3d 541, 545-46 (S.D.W. Va. 2023) finding that because the insurance agent solicited an application for insurance, she was an agent of the insurer issuing the policy in any controversy between the insured and the insurer).

ABRAHAM LINC CORP. v. SPINNAKER INS. CO., et al.                    1:23-CV-98

**IN PART.** The Motion is **GRANTED** as to Plaintiff's Breach of Contract claim under the Computer and Funds Transfer Fraud ("CFTF") Endorsement (Count II in part) and Count IV Reasonable Expectations. *Defendants' Motion to Dismiss First Amended Complaint* [ECF No. 9] is **DENIED** as to Count I Bad Faith; Plaintiff's Breach of Contract claim under the Social Engineering Endorsement (Count II in part); Count III Constructive Fraud; and Count V Vicarious Liability[5]. Accordingly, Plaintiff's *First Amended Complaint* [ECF No. 1-7 at p. 126], is **DISMISSED WITH PREJUDICE** as to Plaintiff's Breach of Contract claim under the Computer and Funds Transfer Fraud ("CFTF") Endorsement (Count II in part) and Count IV Reasonable Expectations.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record by the CM/ECF system.

**DATED:**  July 16, 2024

*Tom S Kleeh*
_____
THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA

---

[5] While not dismissed at this stage, the Court only considers Count V as an additional theory of extending liability on the underlying claims to Defendants for the conduct of its agents.